The petition alleges that at the March Term, 1855, of the County Court of Harnett, the Justices thereof, a majority being present, made an order, and caused the same to be entered of record, appointing Neill McKay, Alexander D. McLean, Cornelius H. Cofield, Joseph T. Rearden, and Archibald S. McNeill, "commissioners to lay off the lots of the county town, designate the public squares, a place for the court-house and other public buildings, goal, c."; that at the next term of the said court, being June term, 1855, the justices thereof, a majority being present, made an order, and caused the same *Page 489 
to be recorded, directing that the committee appointed at the last term, to lay off the lots for the county site of Harnett, be and they are hereby constituted a committee on building; that at the same sitting of the court, Alexander D. McLean was excused from serving upon the committee on public buildings, and Silas Douglas, George W. Pegram, Archibald Cameron, and Willie T. Rhodes, were added thereto; and an order was passed and recorded, as follows: "Ordered by the Court, that the committee on public buildings, be, and they there are hereby authorised to let out the building of a good fire-proof brick court-house and goal for the county of Harnett, according to the plan and direction, a majority of the said committee may adopt, having a due regard for the interest of the county; that the said Neill McKay, Cornelius H. Cofield, Joseph T. Rearden, Archibald S. McNeill, Silas Douglas, George W. Pegram, Archibald Cameron, and Willie T. Rhodes, acting for, and in behalf of the county of Harnett, by virtue of their appointment as commissioners, invited sealed proposals for the building of a good fire-proof brick goal upon the public square, within the limits of Toomer, the county town of Harnett; that the petitioner sent in a proposition which was accepted; that accordingly, in the month of August, 1855, the said commissioners contracted with the petitioner for building the said goal at the place designated, according to certain written specifications, which describe and establish with great particularity the kind of goal, the manner of building, and the material to used about the same; that the contract was duly signed by both parties, and is, together with the specifications, filed in the office of the County Court; that according to this contract, the petitioner on his part, engaged to furnish all the materials, to commence the work as soon as practicable, and to complete the same, on or before the first of November, at the price of $6.400; they (the commissioners,) reserving the right to modify the plan or arrangement of the work, the payment to be made in monthly instalments, as the building progressed agreeably with monthly estimates, to be made by the superintendent, of materials *Page 490 
furnished and work done, — (the commissioners reserving ten per cent, of the said monthly estimates until completion, as a guaranty for faithful performance.) The petitioner further alleges, that soon thereafter, he commenced collecting materials, employed a number of hands, went to work, and in a substantial and workmanlike manner, at the place designated, and by the time specified, built and completed a good fire-proof brick goal, three stories high, including basement, containing six separate apartments for the prisoners, besides rooms for the goaler; which said goal, the petitioner avers was constructed under the supervision of the superintendent appointed by the commissioners, and corresponded with the specifications except in one small particular under the head of plumbing, where the deviation was made under the sanction of the superintendent and the commissioners, in consideration of which departure a deduction of $275, was made, — the ascertained cost of furnishing pipes. The petitioner further alleges, that on viewing and examining the goal after its completion, the commissioners approved and received the same, as being done according to contract, and furnished him with a certificate of the fact in writing, dated the 28th of November, 1856. The petitioner further alleges, that John McNeill, the Treasurer of public buildings for Harnett, was appointed by the commissioners, and acted as superintendent of the work; that from time to time, during its progress, he examined the same, and made monthly estimates thereon of materials and labor; that he retained these estimates in his own hands as the common depository of both parties, and is now dead, having departed this life in March, 1857, but that in his life-time he entirely approved of the said work, during its progress, and after its completion. The petitioner further shews, that at September Term, 1855, of Harnett County Court, the first instalment then falling due, the said commissioners made an application to the Court, a majority of the justices being present, for an appropriation to enable them to meet the payment, which they refused to make, and attempted to repudiate their liability altogether. *Page 491 
He further alleges, that at December Term following, application was made to the same Court, by the commissioners, for an appropriation to meet the estimates, then due, upon which they passed the following orders, and caused the same to be recorded: "Ordered by the court that the Treasurer of public buildings be authorised to borrow a sum not exceeding ten thousand dollars." Also, "Ordered, that the Treasurer of public buildings pay over to Mr. Paschal McCoy $2000;" which was accordingly paid, and a receipt given by the petitioner for the same. Subsequently, the petitioner alleges, when estimates were made by the superintendent in accordance with the contract, applications were made to the court for appropriations, which were, in every instance, refused. Being urged by the commissioners and superintendent to go on with the work, he did so, and though with great inconvenience to himself, he did complete it within the time specified. At September Term, 1856, a majority of the justices being present, he exhibited in open court, the written approval and reception by the commissioners, and made an explicit demand for the remainder due him, stating his account in writing, crediting them with the $2000 paid him, and the $275 relinquished by him in consequence of a modification of the contract, making a credit of $2.275, and claiming the balance of the $6.400, to wit, $4.125 with interest thereon from the 28th of November, 1856, when the building was received, and upon a vote being taken in the said court, his demand was rejected, and has ever since been refused by them.
The prayer of the petition is for an alternative mandamus, against the justices of the county, commanding them that unless they shew good cause to the contrary, when called on by the Court, they pay, or cause to be paid by the officers of the county, the said sum of $4.125, with interest from the 28th of November, 1856; that upon their failure to shew such cause, they be absolutely and peremptorily commanded by the Court to pay as aforesaid.
The petition was verified by the oath of the petitioner, and by authenticated copies of the orders and exhibits referred to *Page 492 
therein; and coming on to be heard it was adjudged, and ordered by the Court, that unless the defendants shall pay the sum of $4.125, with interest from 28th November, 1856, notices issue for them to show cause at the next term of the Court, why a writ of mandamus shall not issue against the justices of Harnett, as prayed for.
The writ of mandamus was issued in pursuance of the order, returnable to the Superior Court of Harnett, March Term, 1859, HEATH, J., presiding. Upon the return whereof, it was moved, in behalf of the defendants, to quash the proceedings, for the following reasons:
1st. No allegation that Toomer, the county site, had been located.
2nd. No allegation in petition that the persons who are alleged to have made the contract, were appointed or authorised by the County Court to make such contract.
3rd. No allegation that the justices of Harnett ever directed the persons aforesaid, or in any way authorised them to contract for the buildings at Toomer, and that the contract itself does not set forth where the buildings were to be erected.
4th. No allegation that the County Court ever saw or accepted the contract.
5th. No allegation that the amounts stated to be due to petitioner, were ever properly ascertained to be due by estimates made by the superintendent, and if made, that they were not certified by him as directed under the contract.
6th. No notice was given to the defendants of the application for the writ.
7th. The petitioner prays for, and the writ commands the justices to pay, c., whereas it should have been to levy a tax or otherwise, c.
8th. That the estimates, if any, were not certified and submitted to the County Court, and no sufficient reason assigned for not so doing.
The defendants' exceptions are, pro forma over-ruled, and the defendants are ordered to make return during the present term of the Court, from which over-ruling and order, the *Page 493 
defendants prayed an appeal to the Supreme Court, which is allowed.
The subject of mandamus has been so often before this Court, within the last few years, that the general principles, and the mode and manner of proceeding are now pretty well settled by authority.
In making the application to the case now before us, the only matter in regard to which we had the slightest hesitation, was the order requiring the justices to pay the money, or cause it to be paid by the officers of the county. The other grounds taken in support of the motion to quash, can be disposed of in a few words:
1st. A more distinct allegation, that the county site had been located at Toomer, than is set out in the petition was unnecessary. The justices of the county are presumed to know the statute in reference to the location of their county site, and the acts done in pursuance thereof.
2d 3rd and 4th. The orders of the county court which are set out in the petition, show that the contract was duly entered into by the duly authorised agents of the justices.
5th and 8th. The stipulation in reference to the monthly payments to be made to the petitioner, upon the estimates of the superintendent, was for the benefit of the petitioner, and the allegation that the entire work has been completed, approved and accepted, makes any further reference to the monthly estimates and payments than that contained in the petition, unnecessary.
6th. The purpose for requiring notice of the application, is to save the cost of unnecessary litigation, by giving the party an opportunity to do the act. If such notice is in any case necessary, according to our practice, considering the former proceedings that had taken place in the premises, it was entirely a matter of supererogation in this instance. The demand *Page 494 
for the payment of a specified amount alleged to be due under the contract, which was made with all proper formality before the present proceeding commenced, gave the justices an opportunity to avoid litigation, if such had been their pleasure, and the writ being in the alternative, may be considered in the nature of a rule. State v. Jones, 1 Ired. Rep. 129; and, so far as objections to the writ are concerned, eveery [every] purpose is answered according to our mode of practice by the motion to quash.
7th. Upon consideration, we are satisfied that the proper order is to pay the money, and not an order requiring the justices to lay taxes, c., which was the substitute proposed. — Tucker v. The Justices ofIredell, 1 Jones' Rep. 451.
It was suggested that this will bear hard upon the justices individually; but the contract having been entered into in their behalf, in pursuance of power vested in them by law, this Court must presume, either that they have some sufficient return to make, so as to prevent the issuing of a peremptory writ, or else, that they have taken the necessary means and provided a fund to meet the claim, if it is a just one.
It is fortunate that the matter has at last been put in a condition to enable the justices to make a due return, so as to have a trial on themerits, and end the litigation.
There is no error. This opinion will be certified, and a procedendo issue.
PER CURIAM, Judgment affirmed.